COMMONWEALTH *vs.* MICHAEL TARRANT.

Suffolk.   March 19, 1974. — July 31, 1974.

Present: ROSE, GOODMAN, & GRANT, JJ.

*Robbery.   Dog.   Words,* "Dangerous weapon."

An instrumentality which reasonably appeared capable of inflicting
bodily harm could be found to be a dangerous weapon within the
meaning of G. L. c. 265, § 17, regardless of whether it was
dangerous in fact.   [485-486]

A dog used for the purpose of intimidation or attack may constitute
a dangerous weapon within the meaning of G. L. c. 265, § 17.
[486-487]

At the trial of an indictment charging armed robbery, where there
was evidence that the defendant committed a robbery while
accompanied by a medium-sized German shepherd dog, there was
no error in instructing the jury that an animal could be found to
be a dangerous weapon.   [486-487]

At the trial of an indictment charging armed robbery, the fact that
the judge in his charge to the jury gave a knife as an example of a
dangerous weapon did not amount to a ruling that a knife was,
as a matter of law, a dangerous weapon, when considered in
light of the charge as a whole, including instructions to the effect
that questions of fact were entirely within the province of the
jury.   [487]

There was no error in denying the defendant's motion for a directed
verdict on an indictment charging armed robbery where there was
evidence that he had committed a robbery while carrying a
"kitchen-type" knife and accompanied by a medium-sized German
shepherd dog.   [487]

INDICTMENT found and returned in the Superior Court
on January 16, 1973.

The case was tried before *Bennett,* J.

*Margaret Burnham* for the defendant.

*Thomas F. Reilly,* Assistant District Attorney (*Robert J. McKenna, Jr.,* Legal Assistant to the District Attorney with him) for the Commonwealth.

ROSE, J. The defendant was indicted for armed robbery and for entering a dwelling house and committing an assault therein while armed with dangerous weapons (a knife and a dog). He was found guilty on both indictments after a jury trial held pursuant to G. L. c. 278, §§ 33A-33G. With regard to the robbery indictment, the defendant has assigned as error certain instructions which were given to the jury and the denial of his motion for a directed verdict. Other assignments were not argued in the defendant's brief and are deemed waived. Rule 1:13 of the Appeals Court, 1 Mass. App. Ct. 889 (1972). We do not consider those assignments of error which relate to the defendant's indictment for entering a dwelling and committing an armed assault therein as that charge was placed on file. *Commonwealth* v. *Locke,* 338 Mass. 682, 684 (1959). *Commonwealth* v. *Flowers,* 1 Mass. App. Ct. 415, 419 (1973).

The evidence was as follows. On November 23, 1972, between 8:00 and 8:30 A.M., the defendant entered the bedroom of an apartment at 4 Bucknam Street in Roxbury occupied by one David Weinberg. The defendant carried a "kitchen-type" knife and was accompanied by a medium-sized German shepherd dog. After pointing the knife at Weinberg and ordering him not to move, the defendant picked up a radio and took approximately sixty dollars from Weinberg's wallet. During this time the dog wandered about the room, at one point approaching to within a "couple of feet" of the mattress on which Weinberg lay. The defendant ordered the dog, which answered to the name of "King," to come to him, and the dog obeyed. The defendant then asked Weinberg if he had another radio, warning him that "If you have another radio and you aren't telling me about it, I'll kill you." Soon afterwards the defendant left with the

dog, taking with him a bicycle and a hammer in addition to the radio and the cash.

The jury were instructed that an instrumentality could be found to be a "dangerous weapon" if it reasonably appeared capable of inflicting bodily harm.[1] The defendant argues that this charge was erroneous; that because simple robbery involves the use of "force and violence, or . . . [an] assault and putting in fear" (G. L. c. 265, § 19), conviction of armed robbery must require a finding that the accused possessed an instrument dangerous in fact, not merely in appearance.

It was said in *Commonwealth* v. *Henson,* 357 Mass. 686, 693 (1970), that "the public peace and order is affected by and dependent upon what is reasonably apparent, and not upon secret fact or reason rendering the assailant incapable of accomplishing . . . [a] battery. . . . [This reasoning] applies with even greater force to a case of apparent ability to accomplish a battery attempted or threatened by means of a firearm. The threat to the public peace and order is greater, and natural reactions thereto by the intended victim and others may be more sudden and violent than in cases where no weapon is involved."

Although *Commonwealth* v. *Henson* involved a prosecution for assault with a dangerous weapon (a revolver loaded with cartridges which the defendant, but no one else, knew to be blanks) we think that the principle set forth in that decision is applicable also to the crime of armed robbery. General Laws c. 265, § 17,[2]

---

[1] The judge's instruction on this point was as follows: "[A]ny instrumentality, including an animal, that I appear to be capable of using against you right now, in such a way as to inflict bodily harm upon you; in short, any instrumentality, dead or alive, which appears reasonably to a supposed victim to be about to be used to inflict bodily harm upon him, can be found to be a dangerous weapon."

[2] "Whoever, being armed with a dangerous weapon, assaults another and robs, steals or takes from his person money or other property which may be the subject of larceny shall be punished by imprisonment in the state prison for life or for any term of years . . . ."

is intended to punish not merely those robbers who possess a weapon dangerous in fact, but also those who possess a weapon which gives the appearance of being dangerous, since the fear felt by victims and bystanders and the danger to public order resulting from their possible reactions are the same in either case. We conclude that the instructions on this point were correct.[3] See *Commonwealth* v. *Nickologines,* 322 Mass. 274, 277 (1948). Our conclusion that the threatened use of an apparently dangerous weapon is sufficient to make the offense more serious than simple robbery is adopted in the Proposed Criminal Code of Massachusetts c. 266, § 16(b). See Commentary, Model Penal Code, Tentative Draft Number 11, p. 71.

The defendant has also assigned as error the instruction that an animal could constitute a "dangerous weapon" for purposes of the armed robbery statute.[4] The defendant does not suggest why the statute should not be interpreted to encompass the use of dogs in the commission of robberies, but stresses the apparent lack of precedent on this point.

A dangerous weapon is "any instrument or instrumentality so constructed or so used as to be likely to produce death or great bodily harm." *Commonwealth* v. *Farrell,* 322 Mass. 606, 614-615 (1948). See also Anderson, Wharton's Criminal Law and Procedure, § 361. There can be little doubt that a dog (in this case a medium-sized German shepherd) used for the purpose of intimidation or attack falls within this definition.

---

[3] To emphasize that a weapon can be found to be "dangerous" even though it is in fact harmless, the judge gave as an example a bank robber who used a pistol which he (but not the cashier) knew was unloaded. In view of the decision in *Commonwealth* v. *Henson,* this illustration was apt and its employment in the judge's charge was not an abuse of discretion. *Commonwealth* v. *Aronson,* 330 Mass. 453, 457 (1953). *Commonwealth* v. *Greenberg,* 339 Mass. 557, 585 (1959).

[4] See n. 1 for the instruction on this issue.

That dogs can inflict severe injuries is recognized in our law. See, e.g., *Koller* v. *Duggan*, 346 Mass. 270, 272 (1963), G. L. c. 140, § 156 (which permits a person, under certain conditions, to kill a dog which assaults him), and G. L. c. 140, §§ 155 and 159 (which impose liability on the owners of dogs for injuries inflicted by their animals). It is common knowledge that dogs can be instructed to attack persons on command, thus being used as instruments of harm (see, e.g., *Zink* v. *Foss*, 221 Mass. 73 [1915]), and we take judicial notice of the fact that dogs so trained are frequently used in police units known as "K-9 Corps." The Proposed Criminal Code of Massachusetts, c. 263, § 3 (i), defines dangerous weapons to include instruments both "animate . . . [and] inanimate." Without deciding whether animals generally are susceptible of use as dangerous weapons, we hold that dogs can be so employed and that on the evidence in this case the judge's instruction correctly stated the law.

The defendant further asserts that the judge erroneously charged the jury that a knife was, as a matter of law, a dangerous weapon. We do not believe this was the thrust of his instructions read as a whole. Although the judge exemplified a knife as the type of weapon which would "appeal" to the jury as dangerous, his comment was made in the context of other instructions to the effect that determinations of fact were entirely within the province of the jury.

The defendant has also assigned as error the denial of his motion for a directed verdict on the indictment for armed robbery, arguing that there was insufficient evidence that he was armed with a dangerous weapon. We need not restate the evidence on this point. We consider it ample to support the jury's verdict.

*Judgment affirmed.*