Commonwealth *vs.* Michael Tarrant.

Suffolk. January 8, 1975. — April 15, 1975.

Present: Tauro, C.J., Reardon, Quirico, Hennessey, & Wilkins, JJ.

*Robbery. Dog. Words,* "Dangerous weapon."

Evidence at the trial of an indictment for armed robbery that a medium sized German shepherd dog entered with the defendant into the awakened victim's apartment and bedroom, roamed about and moved close to the victim while the defendant collected articles, and responded to the commands of the defendant warranted findings that the dog reasonably appeared capable of inflicting bodily injury and engendered a reasonable fear in the victim which the defendant intended to provoke in order to facilitate robbery, and that the dog constituted a "dangerous weapon" under G. L. c. 265, § 17; it was not essential to the conviction of the defendant that the Commonwealth affirmatively demonstrate that the dog was actually dangerous or was in fact used in a harm-inflicting manner. [411-418]

Indictment found and returned in the Superior Court on January 16, 1973.

The case was tried before *Bennett,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michael D. Cutler* for the defendant.

*Thomas F. Reilly,* Assistant District Attorney (*Robert J. McKenna, Jr.,* Assistant District Attorney, with him) for the Commonwealth.

Hennessey, J. The defendant was convicted in the Superior Court on two indictments; the first charged the

crime of entering a dwelling being armed and committing therein assault with intent to commit a felony; the second charged the crime of armed robbery. The former indictment was placed on file and the defendant was sentenced to ten to twenty years at the Massachusetts Correctional Institution at Walpole on the armed robbery indictment.

An appeal was taken to the Appeals Court, and that court affirmed the conviction. *Commonwealth* v. *Tarrant,* 2 Mass. App. Ct. 483 (1974). We then granted the defendant's application for further appellate review.

The issues to be resolved in this appeal based on assignments of error brought subject to G. L. c. 278, §§ 33A-33G, are (1) whether the judge was in error in denying the defendant's motion for a directed verdict on the armed robbery indictment; (2) whether a "neutral" object, here a German shepherd dog, may be a dangerous weapon the presence of which may be sufficient to make the crime armed robbery; and (3) whether the trial judge properly instructed the jury on the prerequisites for a finding of a dangerous weapon.[1]

The Appeals Court, in affirming the conviction, held, in substance, that a dog may be a dangerous weapon within the meaning of the armed robbery statute, and that on the facts of this case that crime was proved. We also affirm the conviction. We concur in the reasoning expressed in the Appeals Court opinion, and we add below certain additional reasoning impelled by the specific arguments addressed by the parties to us.

We state in brief only those facts necessary to make clear the issues raised by this appeal. On the morning of November 23, 1972, the defendant, accompanied by a

---

[1] The crime of armed robbery in this Commonwealth is defined in relevant part as: "Whoever, being armed with a dangerous weapon, assaults another and robs, steals or takes from his person money or other property which may be the subject of larceny shall be punished by imprisonment in the state prison for life or for any term of years." G. L. c. 265, § 17, as appearing in St. 1952, c. 406, § 1.

medium sized German shepherd dog, entered the victim's apartment, walked to the bedroom, now possessed of what appeared to be a kitchen knife, ordered the awakened victim not to move, and began to collect certain articles and money. At one point the defendant asked the victim a question warning him, "If you have another radio and you aren't telling me about it, I'll kill you." During this time the dog roamed about the room, at one point moving within "a couple [of] feet" of the victim's bed. The dog apparently responded to the defendant's commands, coming to the defendant when so ordered. At the close of the Commonwealth's evidence and after the introduction of all evidence, the defendant moved for a directed verdict on the armed robbery indictment; the motion was denied.

The defendant argues that his motion for a directed verdict should have been granted because a dog is a neutral instrumentality and is not per se dangerous as is a gun; that given this fact, the Commonwealth was required to prove that the neutral instrumentality was used or was threatened to be used in a harm-inflicting manner; and that without such an affirmative demonstration of the "dangerousness" of the neutral object, here the German shepherd dog, the crime was at most simple robbery. Otherwise, the defendant submits, neutral instrumentalities could become "dangerous weapons" for the purposes of armed robbery merely on the basis of the victim's subjective perceptions. Thus, in this case it is apparently the defendant's position that the Commonwealth was required to prove that the dog growled or in some way threatened the victim by its own conduct, or that the defendant threatened to order the dog to attack.

We start with the conclusion that the motion for a directed verdict was properly denied, since the dog, on the facts of this case, could have been found to be a dangerous weapon. Although we need not rule on the issue, it seems apparent that the motion for a directed verdict, was also properly denied because the indictment

alleged that the defendant was armed with both a knife and a dog, and there was evidence to establish that he used a knife to further his purpose. Nevertheless, since we cannot discern now whether the jury found that a knife was used, or indeed may have concluded that the only dangerous weapon used was the dog, we proceed to examine the evidence and the judge's instructions concerning the dog.

Contrary to the defendant's contentions, the standard applied in this case does not depend on the victim's subjective perception but rather rests on an evaluation of the instrumentality's potential for harm as it might have objectively seemed to a reasonable individual. We have applied such a standard in cases involving simple assault, *Commonwealth* v. *White,* 110 Mass. 407 (1872), and assault by means of a dangerous weapon, *Commonwealth* v. *Henson,* 357 Mass. 686 (1970). See *Commonwealth* v. *Slaney,* 345 Mass. 135 (1962); Perkins, Criminal Law, 91-93 (1957).[2]

The offense of robbery while armed is but an aggravated form of common law robbery and is to be distinguished in main by the manner of punishment and not by the material elements composing the common law

---

[2] While it is true that this court has distinguished the offenses of assault and assault by means of a dangerous weapon from armed robbery by pointing out that the gist of the latter crime is robbery being armed and not the use of the weapon (*Commonwealth* v. *Nickologines,* 322 Mass. 274, 277 [1948]; *Commonwealth* v. *Chapman,* 345 Mass. 251, 254-255 [1962]), it is also true that the material elements of assault and assault by means of a dangerous weapon have direct relevance to the crime of robbery. This follows because that form of assault, "in which the person senses that force may be used and is thereby put in fear, does meet the robbery requirement when the fear facilitates the theft." *Commonwealth* v. *Richards,* 363 Mass. 299, 304 (1973). G. L. c. 265, § 17. Cf. *Commonwealth* v. *Jones,* 362 Mass. 83, 85 (1972). And, where the robbery is accomplished by an assault "it cannot be said the actor is judged by what he does without regard to the victim's reaction." *Commonwealth* v. *Richards, supra,* at 304. *Commonwealth* v. *McCarthy,* 360 Mass. 366 (1971).

crime of robbery. Cf. G. L. c. 265, § 19. The statute defining the offense of armed robbery was first enacted in this Commonwealth by St. 1819, c. 124, § 1, and has since that time been in force, with the exception that the punishment has been reduced from death to imprisonment in the State prison for life. St. 1839, c. 127. As stated in the early cases construing the statute, "[t]here is no provision, either express or implied, that the striking or wounding is to be inflicted with the weapon with which the robber is armed." *Commonwealth* v. *Mowry,* 11 Allen 20, 22 (1865). *Commonwealth* v. *Cody,* 165 Mass. 133, 137 (1896). The purpose of the statute is to make robbery while possessed of a dangerous weapon a more serious offense because such robbery "would naturally lead to resistance and conflict" in which use of the dangerous weapon may be expected to follow. *Commonwealth* v. *Mowry, supra.*

Thus, it is not only the actual use of the weapon in the sense of harm in fact inflicted that makes the crime of armed robbery aggravated; rather it is more importantly the potential for injury, and the tendency toward resistance, conflict, and violence in result which exists where robbery is perpetrated with the use of a dangerous weapon. See generally Perkins, Criminal Law 285 (2d ed. 1969); 67 Am. Jur. 2d, Robbery § 4 (1973). It follows that, in robbery, as in assault by means of a dangerous weapon, whether the weapon is actually used to inflict harm is largely irrelevant. Rather, as we have stated, the relevant point is the "objectively menacing conduct of the defendant . . . [producing] the fear of harm which it was intended to produce, with the same consequential tendency to provoke a breach of the peace." *Commonwealth* v. *Slaney,* 345 Mass. 135, 140 (1962).

Accordingly, we conclude that the Commonwealth, in order to prove the crime of armed robbery in this case, was not required to have affirmatively demonstrated that the dog was actually dangerous (*Commonwealth* v.

*Henson, supra,*) or was in fact used in a harm-inflicting manner, since the proper inquiry is whether the instrumentality is such as to present an objective threat of danger to a person of reasonable and average sensibility. We note that the result reached here is consistent with our reasoning in *Commonwealth* v. *Nickologines,* 322 Mass. 274 (1948), wherein we affirmed a conviction for armed robbery despite the fact that the gun used in the robbery was unloaded. In that case, as in the assault cases cited above, we focused on the instrumentality's apparent ability to inflict harm. We apply the same analysis here.[3]

However, we agree with the defendant that where it appears that the instrumentality is not in its ordinary use designed to produce death or serious bodily injury, therefore qualifying as matter of law as a dangerous weapon, then its potential danger must be measured by objective standards and not by the victim's subjective apprehension.[4] Accordingly, where the instrumentality is not per se harm-inducing it is a question of fact for the jury whether the circumstances surrounding the presence of the instrumentality suggest its latent character as dangerous. In resolving this issue the jury may consider the nature, size, and shape of the object as well as the way in which it is handled or controlled. Relative to the

---

[3] The Proposed Criminal Code of Massachusetts c. 266, § 16 (b) (1972), in line with our analysis, defines the more serious degree of robbery if the defendant or another participant "(1) is armed with a dangerous weapon or *apparent dangerous weapon*" (emphasis added). See Am. Law Inst., Model Penal Code, § 222.1 and Comments 1-4, pp. 68-71 (Tent. draft No. 11, 1960).

[4] Of course where the neutral object is in fact used to inflict serious injury it would clearly be a dangerous weapon. As stated in *Commonwealth* v. *Farrell*, 322 Mass. 606, 614-615 (1948), where we held that a lighted cigarette used to inflict burns on the victim was a dangerous weapon, that term may be defined to mean "any instrument or instrumentality so constructed *or so used* as to be likely to produce death or great bodily harm" (emphasis added). See cases cited in 322 Mass. at 615, fn. 1.

inquiry the jury should consider whether, based on the objective conditions at the time of the assault, the exhibition of the instrumentality could *reasonably* engender the victim's fear and whether the perpetrator of the robbery did intend to provoke that fear in order to facilitate the theft.[5] Cf. *Commonwealth* v. *Slaney,* 345 Mass. 135, 140 (1962). See generally *People* v. *Graham,* 71 Cal. 2d 303 (1969) (shod foot may in certain circumstances be a dangerous weapon); *People* v. *Raleigh,* 128 Cal. App. 105 (1932).

In sum, the issue, where a neutral object is involved, turns on whether the instrumentality under the control of the perpetrator has the apparent ability to inflict harm, whether the victim reasonably so perceived it, and whether the perpetrator by use of the instrumentality intended to elicit fear in order to further the robbery.[6]

We must go a step further in this case to determine whether the jury were properly instructed and had before them sufficient evidence to find that the dog was a dangerous instrumentality. The defendant argues that the judge erroneously instructed the jury to evaluate whether the dog was dangerous solely on the animal's subjective impression to the victim. The judge stated that an instrumentality could be found to be a dangerous

---

[5] We emphasize that the crucial point is whether the victim *could* reasonably have feared impending harm and it is not necessary that the victim be shown to have, in fact, experienced fear. In this regard we reaffirm the principle stated in *Commonwealth* v. *Slaney, supra.* However, we point out that evidence as to the victim's apprehension and subjective state although not determinative is material to this issue. Note that this standard differs from that applied in civil cases where fear or at least apprehension is essential to recovery. Restatement 2d: Torts, § 22 (1965).

[6] We think that the definition of a dangerous weapon adopted in the Proposed Criminal Code of Massachusetts c. 263, § 3 (i), is well stated: "any firearm or other weapon, device, instrument, material or substance, *whether animate or inanimate,* which in the manner which it is used *or is intended to be used* is capable of producing death or serious bodily injury" (emphasis added).

weapon if it reasonably appeared capable of inflicting bodily harm.[7]   This was a proper statement of the law.

Finally, there was sufficient evidence for the jury to find that the dog was in these circumstances a dangerous weapon within the provisions of G. L. c. 265, § 17: the dog entered the victim's bedroom with the defendant who was carrying a knife; roamed about the room while the defendant searched for goods, moving within close proximity to the victim; and answered to the defendant's orders.   A German shepherd is a relatively large and well known breed with the physical capability of inflicting harm.   Further, the defendant did tell the victim that he would kill the victim if he lied to him.   These are objective facts that could reasonably have persuaded the jury.   Moreover it is a well known fact, one judicially noticed by the Appeals Court, that dogs may be trained to attack persons.   See the statutes and cases cited in the opinion of the Appeals Court, *Commonwealth* v. *Tarrant*, 2 Mass. App. Ct. 483, 486-487 (1974).   Given these facts the jury clearly had sufficient evidence to find that the victim's fear was reasonable and was intentionally caused by the defendant through the instrumentality of the dog in order to facilitate the theft.

*Judgment of Superior Court affirmed.*

---

[7] The judge in instructing the jury on whether the dog could be considered a dangerous weapon stated in pertinent part:   "And I put it to you, it was a *reasonable fear* [example of unloaded gun].   And under these circumstances, because such an action presents, ladies and gentlemen, such a serious breach of the public peace and creates, if you will, such a risk of activities that I can't anticipate, that such a person ought to be held for having used a dangerous weapon in that case that I gave you. . . . And this I am going to instruct you on, with any instrumentality, including an animal, that I appear to be capable of using against you right now, in such a way as to inflict bodily harm upon you; in short, any instrumentality, dead or alive, *which appears reasonably* to a supposed victim to be about to be used to inflict bodily harm upon him, can be found to be a dangerous weapon" (emphasis added).