## Commonwealth v. Greer

*Patrick Carmody, assistant district attorney,* for the commonwealth.

*Lawrence J. Persick,* for defendant.

GAVIN, *J.,* October 24, 1989 — On the evening of June 17, 1989 Trooper Quigley of the Pennsylvania State Police responded to the residence of Elizabeth Santos in Penn Township, Chester County, Pennsylvania. Trooper Quigley had been dispatched to investigate a possible rape but was advised by Ms. Santos that she had not placed the call nor had she been raped. As the trooper attempted to leave, one James Hirsch took up a position behind the officer's vehicle, preventing the officer's attempt to leave. After repeated requests that Mr. Hirsch remove himself, and several attempts to back his vehicle up, Trooper Quigley advised Mr. Hirsch that he was under arrest. Mr. Hirsch resisted the trooper's attempt to take custody of him, a scuffle ensued, and both he and Trooper Quigley fell to the ground. During the course of the scuffle, a rather large boxer (the four-legged variety) appeared on the scene and began to snap at the officer's hands and feet. The trooper continued his efforts to subdue Mr. Hirsch while simultaneously attempting to fend off the dog. Ultimately he noticed Mr. Greer close at hand and inquired as to whether or not the dog was his, to which Greer responded, "yes." The trooper then requested Greer to take the dog under control which Greer refused to do. Only the intervention of one Mrs. McMahon brought the dog under control. Throughout this rather harrowing experience, the trooper feared that he would be injured by the dog which he thought was a "pit bulldog." Mr. Greer was subsequently arrested and charged with aggravated assault, simple assault and reckless endangerment in addition to other offenses.

Defendant filed a motion for writ of habeas corpus with regard to the assault and reckless endangerment counts. Counsel have agreed that I might decide the issue based solely upon the transcript of the preliminary hearing held June 26, 1989.

## ISSUES

Does barking and snapping at the hands and feet of a police officer by one's dog, in the absence of any direction by the dog's owner to do so, make the owner criminally liable? To say that there is a paucity of Pennsylvania case law on the subject would be an understatement.

Trooper Quigley certainly has an adequate remedy on the civil side of our court where the law is clear that one is responsible for the conduct of one's dog that is let loose to run. See *Miller v. Hurst*, 302 Pa. Super. 235, 448 A.2d 614 (1982). However, the mens rea requirement for the offenses of simple and aggravated assault and/or reckless endangerment require much more than negligent conduct. Specifically, the conduct in which defendant is alleged to have engaged is required by statute to be either intentional, knowing or reckless conduct. The preliminary hearing transcript belies such conduct on the part of Mr. Greer. Trooper Quigley testified at page 9 of the notes of testimony dated June 26, 1989 as follows:

Q: You didn't see Mr. Greer take the dog off the leash, did you?

A: No.

Q: Did you see Mr. Greer give the dog any kind of direction, did you?

A: No.

Q: All you know is the general direction the dog came from which was as you have indicated on your diagram, where?

A: It would be somewhere in this area.

Q: At that time Mr. Greer is not standing there, is that correct?

A: At that time Mr. Greer. . . .

Q: Is Mr. Greer still back here?

A: No, Mr. Greer walked over.

There is no evidence whatsoever in the transcript that Mr. Greer unleashed the dog or encouraged the dog to attack the trooper. It is clear that he stood idly by while the dog interfered with the trooper. However, I can find no authority for the proposition that the failure to call off one's dog, that from all appearances is operating independently, would attach criminal liability to the dog's owner. Indeed, I was only able to track down three somewhat related matters. Counsel's attention is invited to the annotation dog-dangerous-weapon-aggravating offense, 7 A.L.R. 4th 607, 608-9. The Supreme Court of the Commonwealth of Massachusetts in *Commonwealth v. Tarrant,* 367 Mass. 411, 326 N.E. 2d 710 (1975) determined that where a German shepherd dog had entered the victim's bedroom with defendant, obeyed defendant's commands and passed in close proximity to the victim, the facts supported a finding that the dog was a dangerous weapon within the meaning of the Massachusetts Armed Robbery Statute. Key to the court's reasoning was its determination that the dog was under the control of the defendant. The Superior Court of New Jersey in *State In the Interest of J.R.,* 165 N.J. Super. 346, 398 A.2d 150 (1979) affirmed the trial's courts determination that a dog which responded to a juvenile's commands constituted an offensive weapon within the meaning of the New Jersey statute prohibiting assault with an offensive weapon. Again, the dog had accompa-

nied the juvenile and actually moved in a menacing manner toward the victims when commanded to do so by the juvenile. In *People v. Torrez et al.,* 86 Misc. 2d 369, 382 N.Y.S. 2d 233 (1976) it was held that a German shepherd dog could be viewed as a "dangerous instrument" within the meaning of the New York statute defining "dangerous instrument."[*] The victims in this case were likewise threatened with attack by a German shepherd dog.

As can be seen from a review of these three cases, more than the presence of the dog is required. The dog in each of the cited cases was found to be acting at the behest of, and for the benefit of, the respective defendants. As there is absolutely no evidence of Mr. Greer's having done anything other than stand idly by, the learned district justice erred in finding that the commonwealth had made out a prima facie case with respect to these charges. Accordingly, I enter the following

## ORDER

And now, October 24, 1989, upon review of the preliminary hearing transcript, defendant's petition for writ of habeas corpus as to counts 1, 2 and 3 is granted.

---

[*]Clearly, a large and potentially ferocious dog such as a German shepherd trained to menace another human being, to threaten with imminent attack *upon the command of his master,* another human being, and used by its master to compel another human being to yield up his valuables, becomes an instrument by means of which the divestation of ownership is effected. *Torrez,* 382 N.Y.S. 2d at 234.