The defendant appeals from his conviction of assault by means of a dangerous weapon, to wit, a firearm (ABDW).[1] He argues that the judge erred in responding to a jury question concerning the actus reus of the crime, that the judge gave erroneous instructions on specific intent, and that the prosecutor's closing argument vouched for the credibility of police witnesses. We affirm.
Background. The jury could have found the following facts. In the early morning of February 1, 2015, Chelsea police Officer Rafael Serrano was on patrol in Bellingham Square in Chelsea when he heard two gunshots. Serrano looked up, heard a third gunshot, and saw a muzzle flash in a crosswalk approximately 400 feet from where he was parked. A man, later identified as the defendant, was in the crosswalk near the muzzle flash.
As Serrano approached in his cruiser, he saw the defendant try to conceal a firearm in his clothing. Before he could do so, Serrano yelled, "[S]top, police" and exited his cruiser with his weapon in hand. The defendant fled with the firearm in his right hand, as Serrano pursued him on foot. Serrano could see the firearm in the defendant's hand during the entire pursuit.
Chelsea police Officer Joseph Capistran was parked near Bellingham Square when he heard gunshots and a report over his radio that another officer was following the suspect on foot. Capistran drove to Chestnut Street, exited his cruiser, and saw the defendant run around the corner with "his right hand raised" and holding a firearm. Capistran yelled a number of times, "[D]rop the gun," but the defendant instead ran up the sidewalk and momentarily disappeared behind a van. When he emerged, the defendant took a few steps with the firearm at his right thigh, causing Capistran to give three more verbal warnings to drop the gun. The defendant stopped, turned to face Capistran, who was about fifteen feet away, and "raise[d]" the firearm to about waist level in a "threatening manner." The firearm was high enough that Capistran "was able to see the hole at the end of the barrel." Believing that he was in immediate danger, Capistran fired three rounds, hitting the defendant.
Meanwhile, Serrano was still pursuing the defendant on foot when he heard someone yelling "drop the gun," after the defendant ran onto Chestnut Street. When Serrano turned the corner, he saw the defendant on the sidewalk and Capistran in the street giving orders to drop the gun. Serrano observed as the defendant turned toward Capistran and "raised" the firearm to about waist level. Capistran then fired his weapon three times.
Discussion. 1. Response to jury question. During deliberations the jury asked the judge: "We need clarification of 'assault with a dangerous weapon.' Does the weapon have to be pointed at a person in order to constitute assault?" After consulting with the parties, the judge replied as follows:
"Whether assault by means of a dangerous weapon occurs depends on what facts you find. What is required is that the defendant intentionally engaged in conduct of the sort that would raise a reasonable apprehension of bodily injury.
"This determination can be made on the basis of the facts and circumstances you find surrounding the alleged crime including how the weapon's potential for harm would have appeared to a reasonable observer."
The defendant argues, for the first time on appeal, that the overall thrust of the instruction-that the jury did not have to agree that he pointed the firearm at someone-was wrong because the pointing of the firearm at Capistran was the "sole, indispensable actus reus upon which the [ABDW] charge was premised." We disagree. To the extent the jury were asking whether, as a matter of law, a person must have pointed a firearm at someone to be guilty of assault with the firearm, the answer plainly is no, as the defendant acknowledges. See, e.g., Commonwealth v. Lengsavat, 49 Mass. App. Ct. 243, 244-245 (2000). And to the extent the jury were seeking the judge's assistance on how to apply the law to the facts of the case, the judge properly declined to answer such factual questions as she was "not authorized to speak" to them. Commonwealth v. Nelson, 468 Mass. 1, 16 (2014).
While not quarreling with these propositions, the defendant argues that the Commonwealth's case in fact was limited to its allegation that he pointed the gun at Capistran, and the judge should have so instructed. But that is wrong as a factual matter. Based on Capistran's and Serrano's testimony, the jury could have found either that the defendant raised the firearm without pointing it at Capistran, or that he both raised and pointed it. Defense counsel noted this distinction several times in his closing, arguing for example that Serrano's testimony "started off as a raised [the] gun, and then with a little bit more questioning became pointed the gun." Thus, had the judge answered yes to the jury's question, as the defendant suggests she should have, she would have been commenting on factual issues as to which she was "not authorized to speak." Ibid. It was for the jury to decide what the defendant did with the firearm and whether his conduct constituted assault. The judge did not abuse her discretion in declining to resolve these factual issues herself. See Commonwealth v. Wood, 469 Mass. 266, 293 (2014), quoting from Commonwealth v. Delacruz, 463 Mass. 504, 518 (2012) ("The proper response to a jury question must remain within the discretion of the trial judge, who has observed the evidence and the jury firsthand and can tailor supplemental instructions accordingly").
The defendant also challenges the last sentence of the response, arguing that the judge erred by telling the jury that they could consider "how the weapon's potential for harm would have appeared to a reasonable observer." The judge took this language, at the prosecutor's suggestion and over the defendant's objection, from Commonwealth v. Tarrant, 367 Mass. 411 (1975). But the defendant is correct that Tarrant concerned a different issue-the standard for determining whether a neutral item used during an assault constitutes a dangerous weapon. See ids="3869101" index="6" url="https://cite.case.law/mass/367/411/">id. at 414-417. Because firearms are dangerous per se, see Commonwealth v. Keown, 478 Mass. 232, 249 (2017), the Tarrant standard is not relevant here. Rather, as the Commonwealth agrees, the question that the jury had to decide was whether the defendant engaged in "objectively menacing" conduct with the intent to put the victim in fear of immediate bodily harm. See, e.g., Commonwealth v. Kilburn, 438 Mass. 356, 358 (2003).
Looking at the instructions as a whole, however, we conclude that they accurately communicated the relevant legal principles. See Commonwealth v. Cassidy, 470 Mass. 201, 223 (2014), quoting from Commonwealth v. Sellon, 380 Mass. 220, 233-234 (1980) ("The judge's additional instructions 'must be read in light of the entire charge,' and the judge is 'not required to repeat all aspects of [her] prior charge' "). The judge's response to the jury question began by stating that the defendant must have "intentionally engaged in conduct of the sort that would raise a reasonable apprehension of bodily injury" (emphasis added). Likewise, in her main charge, the judge told the jury several times that the defendant had to have committed an "act" or "conduct" that would cause a reasonable apprehension of bodily harm. The judge then set out as a separate element of the crime that the defendant "in committing the assault used a dangerous weapon." In light of these instructions, we disagree with the defendant's assertion that the jury would have understood the judge's response to mean that "they could find [the defendant] guilty of [ABDW] if a loaded gun is a dangerous weapon." Rather, a rational jury would have understood that the defendant had to have committed some act or conduct that caused Capistran to reasonably apprehend harm. In these circumstances we can say "with fair assurance" that the inclusion of the Tarrant language in the judge's response did not mislead the jury or "had but very slight effect." Commonwealth v. Cruz, 445 Mass. 589, 591 (2005), quoting from Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).
2. Instructions on specific intent. The defendant next argues that the judge did not adequately convey to the jury that the defendant needed to have intended a particular result from his conduct, i.e., that Capistran would be placed in fear of bodily harm. The defendant's primary quarrel is with the judge's use of the Superior Court model jury instruction defining specific and general intent, the relevant portion of which is set out in the margin.[2] Because the defendant did not object to the instruction-and in fact affirmatively requested that the judge give it-we review to determine whether any error created a substantial risk of a miscarriage of justice. See Commonwealth v. St. Louis, 473 Mass. 350, 359 (2015).
Both the Supreme Judicial Court and this court have recognized that defining the difficult legal concepts of general and specific intent "can obscure more than [it] illuminate[s]." Commonwealth v. Deschaine, 77 Mass. App. Ct. 506, 513 (2010). See Commonwealth v. Gunter, 427 Mass. 259, 268-269 (1998) ; Commonwealth v. Sibinich, 33 Mass. App. Ct. 246, 249 n.1 (1992) ; Commonwealth v. Henault, 54 Mass. App. Ct. 8, 13 n.7 (2002). Here, the instruction defining specific intent was unilluminating because, among other reasons, "it did not emphasize that the defendant must have acted with purpose or have intended certain consequences." Gunter, 427 Mass. at 269. We take this opportunity to reiterate that it is not " 'necessary that a judge use the common-law terms, general intent and specific intent, provided that [s]he explains to the jury the Commonwealth's burden on the specific intent element in a charged offense ...-that a defendant must not only have consciously intended to take certain actions, but that he also consciously intended certain consequences ... to result from his actions.' (Footnote omitted.)." Deschaine, 77 Mass. App. Ct. at 513, quoting from Gunter, 427 Mass. at 268-269.
Any confusion caused by the instruction did not, however, create a substantial risk of a miscarriage of justice in light of the charge as a whole. When instructing on the elements of ABDW, the judge properly explained that "[a]n assault occurs when the defendant with the intent to cause apprehension of immediate bodily harm does some act that causes such apprehension." She then reiterated that "the Commonwealth must prove beyond a reasonable doubt that the defendant possessed the intention to cause apprehension or fear of immediate bodily harm."[3] Furthermore, the written instructions to the jury[4] contained the following statement, which was underlined for emphasis: "The crime of assault requires the Commonwealth to prove that the defendant acted with a specific intent to act to put the person in fear of imminent bodily injury." Considered as a whole, these instructions accurately conveyed to the jury the specific intent element of the offense.
3. Closing argument. The defendant challenges the prosecutor's closing argument on two grounds. He first contends that the prosecutor impermissibly vouched for the credibility of Capistran and Serrano by referring to them several times as "trained observers." As the defendant preserved this objection at trial, we review for prejudicial error. See Commonwealth v. Kee, 449 Mass. 550, 559 n.11 (2007).
"Improper vouching occurs if 'an attorney expresses a personal belief in the credibility of a witness, or indicates that he or she has knowledge independent of the evidence before the jury.' " Commonwealth v. Ortega, 441 Mass. 170, 181 (2004), quoting from Commonwealth v. Wilson, 427 Mass. 336, 352 (1998). The prosecutor here did neither. By referring to the officers as "trained observers," the prosecutor was not arguing that they should be believed because they are officers. Rather, she was responding to defense counsel's claim that Capistran had imagined that certain things occurred during the incident because he was under stress. To counter that claim, the prosecutor asked the jury to consider Capistran's testimony about his years of experience and training, including "target shooting for accuracy and the scenario base[d] shooting, shoot, don't shoot to test his discretion in these moments."[5] This argument was grounded in the evidence and did not constitute improper vouching. See Commonwealth v. Ahart, 464 Mass. 437, 445 (2013) (not improper vouching to argue that "officer should be believed because he was a twenty-six-year veteran of the State police[ ] ... and ... had worked on more than one hundred homicide investigations"). See also Kee, 449 Mass. at 560 (similar). Any possibility of prejudice, moreover, was mitigated by the judge's instruction that the jury should not give special consideration to the testimony of a police officer because of the nature of his employment.
The defendant next challenges the prosecutor's comment that Serrano would not "risk his entire career for the sake of an officer [Capistran] who could not even remember his name at first." As the defendant failed to preserve this objection, we review to determine whether any error resulted in a substantial risk of a miscarriage of justice. See ids="3816763" index="26" url="https://cite.case.law/mass/449/550/">id. at 559 n.11. We discern no error. The prosecutor's comment was a fair response to defense counsel's attack on Serrano's credibility, see Commonwealth v. Chavis, 415 Mass. 703, 713 (1993), and was grounded in the evidence-in particular, in Capistran's testimony that an officer who commits perjury would face potential "[s]uspension, termination, [and] prosecution." And again, the jury are presumed to have followed the judge's instruction that the testimony of a police officer is entitled to no special weight because of his employment.
Judgments affirmed.

The defendant was also convicted of carrying a firearm without a license, carrying a loaded firearm without a license, and discharging a firearm within 500 feet of a dwelling. Although he filed a general notice of appeal, the defendant does not raise in his brief any claim of error regarding these convictions.

"There are two forms of intent: general and specific. General intent is when we do things more or less unconsciously, such as sitting down in a chair. We would not do it unless our mind first resolved to do it, but it does not require any concentration or focusing of the mind.
"Specific intent is the act of concentrating or focusing the mind for some perceptible period. It is a conscious act and the determination of the mind to do an act before the desired act is committed. In other words, an act performed with specific intent is a conscious one, done with the determination of the mind to commit the act."
Massachusetts Superior Court Criminal Practice Jury Instructions, § 1.9 (Mass. Cont. Legal Educ. 2d ed. 2013).

We disagree with the defendant's assertion that this statement was inaccurate because it did not refer to "the specified victim of the offense," i.e., Capistran. The statement was preceded and followed by multiple references to Capistran as the intended victim of the assault. Thus, read in context, the statement conveyed that the defendant must have intended to put Capistran in apprehension or fear of immediate bodily harm.

The judge provided written instructions on specific intent after the jury advised that they could not hear the tape.

Serrano also testified that he was trained in target shooting and scenario-based shooting.