# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1026-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ALAN T. WALKER,

     Defendant-Appellant.

_____

> Argued January 5, 2022 – Decided March 21, 2022
>
> Before Judges Whipple, Geiger and Susswein.
>
> On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment Nos. 18-04-0452, 18-04-0453, 19-02-0247, and 19-02-0265.
>
> Zachary G. Markarian, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Zachary G. Markarian, of counsel and on the brief).
>
> Lisa Sarnoff Gochman, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Lori Linskey, Acting Monmouth County Prosecutor, attorney; Lisa Sarnoff Gochman, of counsel and on the brief).

PER CURIAM

Defendant appeals from his bench trial conviction for violating a term of his Community Supervision for Life (CSL), N.J.S.A. 2C:43-6.4(d), by failing to re-verify his address pursuant to N.J.S.A. 2C:7-2(e), which is part of Megan's Law.[1] After a bench trial, defendant was found guilty of violating CSL. He also pled guilty to two additional CSL violations and to unlawful possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10. After carefully reviewing the record in light of the applicable principles of law and the arguments of the parties, we affirm.

We briefly summarize the pertinent facts and procedural history. In September 2005, defendant was convicted of endangering the welfare of a child, N.J.S.A. 2C:24-4(a). As a consequence of that conviction, he is required to verify his address with the local police department—in this case, the Neptune Police Department—on an annual basis. N.J.S.A. 2C:7-2(e). Defendant dutifully complied each year between 2005 and 2016. On December 5, 2016, defendant verified his address and signed a form acknowledging that his next annual reverification date was December 5, 2017.

---

[1] N.J.S.A. 2C:7-1 to -23.

On November 8, 2017, on instructions from his parole officer, defendant was admitted to inpatient substance abuse treatment. He remained at that residential treatment facility for sixty days and was released on January 8, 2018. While at the inpatient treatment facility, defendant filled out a form verifying his address for his parole officer. That address verification was separate and distinct from the process under Megan's Law for re-verifying his address with the Neptune Police Department.

When defendant failed to verify his address by the December 5, 2017 deadline, Neptune Police Detective Michael Adam visited the address that defendant had listed in his 2016 reverification. Defendant's father explained to Detective Adam that defendant was receiving inpatient treatment. Detective Adam told defendant's father to instruct defendant to contact the Neptune Police Department when he was released from the treatment facility. Defendant was released on January 8 but did not contact the police department to re-verify his address.

On February 14, 2018, Detective Michael Acquaviva from the Monmouth County Prosecutor's Office Sex Crimes Unit received notification from the

3

OffenderWatch[2] system that defendant had failed to re-verify his address with the local police department.  Detective Acquaviva checked the local jail records, driving records, and criminal complaint records to see if there was any indication that defendant had moved.  Acquaviva called defendant's parole officer, Chantee Walker,[3] and learned that defendant was still living at the address listed in as his 2016 verification.

Acquaviva asked Walker to arrange for defendant to come to the Neptune police station.  On February 16, 2018, Acquaviva, Adam, and defendant met at the police station.  Defendant admitted that re-verifying his address had "slipped his mind."  He also acknowledged that the form he had filled out for his parole officer while at the treatment facility "has nothing to do with the Neptune Police Department, it just has to do with my address verification" for purposes of parole.  Defendant acknowledged that he understood that his compliance requirements for parole were independent from his compliance requirements for Community Supervision for Life.  Defendant was then arrested.

---

[2]  OffenderWatch is an automated system that advises law enforcement officers regarding Megan's Law reverification matters.

[3]  We refer to Officer Walker using her surname and Alan Walker as defendant to avoid confusion.  They are not related.

A-1026-19

In April 2018, under Indictment No. 18-04-0452, a grand jury charged defendant with failure to register as a sex offender, N.J.S.A. 2C:7-2(c). On the State's motion and without objection from defendant, count one of the indictment was amended to charge a violation of N.J.S.A. 2C:7-2(e) (failure to verify address).

Defendant was also charged with other CSL violations in February 2019. Under Indictment No. 19-02-0247, defendant was charged with fourth-degree violating CSL, N.J.S.A. 2C:43-6.4(d). Under Indictment No. 19-02-0265, defendant was charged with third-degree distribution of CDS (heroin), N.J.S.A. 2C:35-5(b)(3); third-degree possession of CDS with intent to distribute (heroin), N.J.S.A. 2C:35-5(b)(3); and three counts of third-degree possession of CDS (fentanyl), N.J.S.A. 2C:35-10(a)(1). He was subsequently charged under Indictment No. 18-04-0453 with fourth-degree violating CSL, N.J.S.A. 2C:43-6.4(d), for purchasing, using, or possessing drugs or alcohol, getting arrested, and failing to report the arrest to his parole officer.

In July 2019, defendant was tried over the course of two days. Detectives Adam and Acquaviva and Parole Officer Walker testified for the State. At the close of the State's case, the court denied defendant's motion for a judgment of acquittal.

A-1026-19

Defendant testified on his own behalf. He acknowledged that he understood his obligation to "register in person with my local police department and re-verify my address every year." He also understood that address reverification "is a lifetime obligation that does not end when my probation or parole is over." He further acknowledged that it was his responsibility alone to re-verify his address and "the police are not responsible to remind me of these obligations." Finally, he also understood that "failure to register, re-register, or re-verify my address is a crime."

Based on the foregoing evidence, the trial judge, sitting as the trier of fact, found defendant guilty. The next day, defendant entered a guilty plea to third-degree heroin possession pursuant to a negotiated agreement in which the State agreed to recommend a State Prison term with no period of parole disqualification. Defendant also entered guilty pleas to two counts charging fourth-degree CSL violations.

On September 13, 2019, defendant was sentenced to a three-year term of imprisonment for his failure to re-verify his address. He was sentenced to a concurrent three-year prison term on his guilty plea conviction to unlawful possession of CDS and concurrent one-year terms on his fourth-degree guilty

A-1026-19

pleas to CSL violations. He received 292 days of time-served credit on three of the sentences and 289 on one.

Defendant raises the following contentions for our consideration:

POINT I

THE TRIAL COURT ERRED IN CONCLUDING WALKER VIOLATED N.J.S.A. 2C:7-2[(e)] BY FAILING TO VERIFY HIS ADDRESS WITH LOCAL LAW ENFORCEMENT WITHIN 48 HOURS OF HIS RELEASE FROM INPATIENT TREATMENT. (not raised below).

POINT II

A DEFENDANT WHO GENUINELY BELIEVES HE HAS SATISFIED HIS DUTY TO VERIFY HIS ADDRESS DOES NOT "KNOWINGLY" FAIL TO VERIFY UNDER 2C:7-2[(e)].

POINT III

CRIMINALLY PROSECUTING A DEFENDANT FOR A SHORT, UNINTENTIONAL DELAY IN REVERIFYING HIS ADDRESS WHERE PAROLE AND LAW ENFORCEMENT HAD KNOWLEDGE OF HIS ADDRESS BEARS NO RATIONAL RELATIONSHIP TO ANY LEGITIMATE GOVERNMENT GOAL AND THUS VIOLATES SUBSTANTIVE DUE PROCESS. (not raised below).

POINT IV

WALKER SHOULD BE ALLOWED TO WITHDRAW THE PLEAS THAT HE ENTERED

AFTER HIS CONVICTION FOR FAILURE TO VERIFY. (not raised below).

We begin our analysis by acknowledging the legal principles governing this appeal. The scope of our review after a bench trial is limited. Final determinations of a trial court "premised on the testimony of witnesses and written evidence at a bench trial" are deferentially reviewed. D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). It is well-settled that jurors, or a judge in a bench trial, have the best "opportunity to hear and see the witnesses and to get a 'feel' for the case that the reviewing court [cannot] enjoy." Twp. of W. Windsor in the Cnty. of Mercer v. Nierenberg, 150 N.J. 111, 132 (1997) (quoting State v. Whitaker, 79 N.J. 503, 515–16 (1979)). Accordingly, "[f]indings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974); see also In re J.R., 165 N.J. Super. 346, 351 (App. Div. 1979).

As a convicted sex offender, plaintiff is subject to Megan's Law's registration requirements, N.J.S.A. 2C:7-1 to -5. Pursuant to N.J.S.A. 2C:7-4(a), sex offenders are required to initially register with the registering agency. Following their initial registration, sex offenders are required to verify their address with "the appropriate law enforcement agency" either "every [ninety]

days" or "annually" depending upon certain statutory criteria. N.J.S.A. 2C :7-2(e). No party disputes that defendant is subject to annual reverification.

We first address defendant's contention, raised for first time on appeal, that the prosecutor and trial judge conflated the distinct obligation to register pursuant to N.J.S.A. 2C:7-2(c) with the obligation to re-verify an address pursuant to N.J.S.A. 2C:7-2(e). Defendant argues the court and prosecutor repeatedly used the terms failure to verify and failure to register interchangeably throughout the trial.

Notably, the trial court referred to a forty-eight hour deadline established under N.J.S.A. 2C:7-2(c)(2), the statutory provision pertaining to initial registration. The court essentially used that feature as a grace period for defendant to re-verify his address after being released from impatient treatment, even though no such deadline is explicitly set forth in N.J.S.A. 2C:7-2(e). We see no harm in the trial court affording defendant the benefit of that grace period.

We note that neither party disputes that defendant could not be prosecuted for failing to verify his address while he was admitted to inpatient treatment. N.J.S.A. 2C:2-1(b) makes clear that "liability for the commission of an offense may not be based on an omission unaccompanied by action unless . . . [t]he omission is expressly made sufficient by the law defining the offense . . . or [a]

9

duty to perform the omitted act is otherwise imposed by law . . . ."  In this instance, N.J.S.A. 2C:7-2(e) imposed a duty on defendant to verify his address. The failure to perform that duty constitutes the act upon which criminal liability is imposed.  But N.J.S.A. 2C:2-1 also makes clear that the omission must be voluntary.  The statute provides, "[a] person is not guilty of an offense unless his [or her] liability is based on conduct which includes a voluntary act or the omission to perform an act of which he [or she] is physically capable."  N.J.S.A. 2C:2-1(a) (emphasis added).  In this instance, defendant was not physically capable of performing the act of address verification at the Neptune police station while he was in impatient treatment.

At oral argument before us, counsel for defendant argued that because the deadline for verifying the address occurred during the sixty-day period of impatient treatment, the duty to verify was excused, not just delayed, and that defendant was therefore not required to verify his address until the next year. We reject that argument.  We believe defendant's admission to residential treatment tolled the obligation to verify during the period of impatient treatment. The tolling ended when defendant was released from impatient treatment.

We also conclude the trial court did not err in interpreting the Megan's Law registration/verification framework to afford a forty-eight-hour grace

period after defendant was released from impatient treatment. That interpretation inured to defendant's benefit. In any event, defendant did not fulfill his obligation to verify his address within that grace period.

After carefully reviewing the entire trial record, we are satisfied that defendant was properly tried and convicted for violating N.J.S.A. 2C:7-2(e), the address verification statute. We recognize that some confusion arose in the distinction between the registration and periodic reverification statutes. The indictment cited to the wrong statutory provision but was amended on the first day of trial without objection. Throughout the trial, the evidence focused on defendant's failure to verify his address. Defense counsel acknowledged at the outset of the trial and again in summation that defendant was charged with the failure to verify his address, and as we have noted, defendant acknowledged both in his statement to detectives and in his trial testimony that he knew he had to verify address. Detective Acquaviva's trial testimony explained the address verification process. In short, the trial focused on N.J.S.A. 2C:7-2(e), not N.J.S.A. 2C:7-2(c), and any inadvertent references by the court to "registration" rather than "verification" were not capable of producing an unjust result. R. 2:10-2.

A-1026-19

We likewise summarily reject defendant's argument that he did not knowingly violate the address verification statute. That argument is belied by the record. As we have noted, defendant acknowledged during his interrogation by the detectives that he was aware of his obligation to annually re-verify his address and had done so for ten consecutive years. He candidly confirmed in his trial testimony that he was aware of and understood his obligation to verify his address with the Neptune Police department and that police had no obligation to remind him of his reverification duty.

Relatedly, we reject defendant's contention that he made a mistake within the meaning of N.J.S.A. 2C:2-4(a) that "negatives the culpable mental state required to establish the offense."[4] That statute affords no defense to a defendant who knows he has a duty and fails to perform a duty imposed by law because compliance "slip[ped] his or her mind." We add that at the sentencing hearing,

_____

[4] N.J.S.A. 2C:2-4(a) provides:

> a. Ignorance or mistake as to a matter of fact or law is a defense if the defendant reasonably arrived at the conclusion underlying the mistake and:
>
> (1) It negatives the culpable mental state required to establish the offense; or
>
> (2) The law provides that the state of mind established by such ignorance or mistake constitutes a defense.

12

the trial court explained that "[i]t's a technical violation of the law, but he knew what his responsibilities were. He did not own up to them and he admitted that very matter-of-factly."

We next address defendant's argument that because his parole officer and local police department knew where he lived and thus had "ready access" to him if needed, imposing criminal punishment for his failure to re-verify his address violates his right to substantive due process. Defendant raises this constitutional argument for the first time on appeal. As a general matter, "[f]or sound jurisprudential reasons, with few exceptions, . . . '[we] will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available.'" State v. Witt, 223 N.J. 409, 419 (2015) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)). Indeed, our Supreme Court has long held that appellate courts should not "consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). "Generally, an appellate court will

not consider issues, even constitutional ones, which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012).

Defendant's constitutional argument does not relate to the jurisdiction of the court. Nor does it concern a matter of great public interest. We nonetheless elect to address defendant's argument on its merits, or rather its lack of merit. As are all statutes, N.J.S.A. 2C:7-2 is presumed constitutional. Whirlpool Props., Inc. v. Dir., Div. of Tax'n, 208 N.J. 141, 175 (2011). A legislative act will only be declared void if "its repugnancy to the Constitution is clear beyond a reasonable doubt." Harvey v. Bd. of Chosen Freeholders of Essex Cnty., 30 N.J. 381, 388 (1959) (citing Gangemi v. Berry, 25 N.J. 1, 10 (1957)). The "heavy burden" of establishing invalidity rests with the party challenging the statute. State v. Trump Hotels & Casino Resorts, Inc., 160 N.J. 505, 526 (1999).

Both the United States Constitution and the New Jersey Constitution guarantee due process to individuals. See U.S. Const. amend. XIV, § 1 (The due process clause bars a state from depriving "any person of life, liberty, or property, without due process of law . . . ."); N.J. Const. art. I, ¶ 1 ("All persons . . . have certain natural and unalienable rights . . . [such as] enjoying and defending life and liberty, of acquiring, possessing, and protecting property."). "Insofar as most rights are concerned, a state statute does not violate substantive

14

due process if the statute reasonably relates to a legitimate legislative purpose and is not arbitrary or discriminatory." Greenberg v. Kimmelman, 99 N.J. 552, 563 (1985). A statute survives a substantive due process attack if it is "supported by a conceivable rational basis." Ibid. (citing Williamson v. Lee Optical of Okla., 348 U.S. 483, 488 (1955)).

Statutes that establish and enforce a convicted sex offender's duty to verify his or her address have long been deemed to be appropriate and constitutional. See Paul P. v. Verniero, 170 F.3d 396, 398 (3d Cir. 1999) (although home addresses are entitled to some privacy protection, New Jersey statute that provides a system of registration and community notification as to certain sex offenders does not violate the constitutional right to privacy by requiring disclosure of home addresses because the government's interest in preventing sex offenses is compelling, and the privacy interest is outweighed by the public interest in knowing where prior sex offenders live so that susceptible individuals can be appropriately cautioned); E.B. v. Verniero, 119 F.3d 1077, 1081 (3d Cir. 1997) (community notification provisions of New Jersey's "Megan's Law," which requires that certain members of community be notified of the presence of sex offenders posing moderate or high risk of reoffense, did not inflict "punishment" under the double jeopardy clause or ex post facto clause; the

15

Legislature's actual purpose was not punitive, the notification was reasonably related to law's nonpunitive goals and community notification was not action of a type historically intended as punishment); In re Registrant J.G., 169 N.J. 304 (2001) (statutory sex offender registration and notification requirements did not violate the equal protection clause of United States Constitution or violate fundamental right to freedom of movement).

In sum, N.J.S.A. 2C:7-2(2) easily meets the rational relation test, and the use of the criminal sanction to incentivize and enforce compliance with the address reverification duty in no way violates a convicted sex offender's substantive due process rights.

Finally, because we affirm defendant's trial conviction for violation of N.J.S.A. 2C:2-7(e), we need not address his contention that if we were to reverse that conviction, he should be allowed to withdraw his post-verdict guilty pleas to unlawful possession of CDS and two other CSL violations.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION