## COMMONWEALTH vs. STEVEN JAMES.

Plymouth. February 3, 1998. - April 21, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & IRELAND, JJ.

*Homicide. Evidence,* Videotape. *Practice, Criminal,* Motion to suppress, Admissions and confessions, Instructions to jury, Voluntariness of statement, Capital case. *Constitutional Law,* Admissions and confessions. *Mental Impairment. Malice.*

Evidence at the trial of a murder indictment clearly warranted the jury's determination of extreme atrocity or cruelty. [313-314]

The record of a motion to suppress a criminal defendant's statements to police supported the judge's conclusion that the statements were voluntarily made after a valid waiver of Miranda rights, and a videotape of the interrogation, the making of which the defendant had assented to, was properly admitted in evidence. [314-315]

At a murder trial, no substantial likelihood of a miscarriage of justice was created by the judge's instructions to the jury, which were correct, on their consideration of mental impairment and extreme atrocity or cruelty. [315-316]

At a murder trial, there was no error in the judge's instructions to the jury on malice, sudden combat, and mental impairment. [316-317]

At a murder trial, the judge correctly reinstructed the jury, in accordance with their request, on first degree murder on theories of deliberate premeditation and extreme atrocity and cruelty and on second degree murder, and the omission of a manslaughter instruction did not create a substantial likelihood of a miscarriage of justice. [317-318]

INDICTMENT found and returned in the Superior Court Department on April 19, 1994.

A pretrial motion to suppress evidence was heard by *Robert L. Steadman,* J., and the case was tried before him.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

*Michael J. Traft* for the defendant.

ABRAMS, J. The defendant, Steven James, appeals from his conviction of murder in the first degree by reason of extreme

atrocity or cruelty.[1] He argues that the evidence was insufficient to support the jury's verdict of murder in the first degree based on extreme atrocity or cruelty, that a videotaped confession should have been suppressed, and that the judge made certain errors in the jury instructions pertaining to mental impairment. We affirm the conviction and decline to exercise our power under G. L. c. 278, § 33E, to reduce the verdict to a lesser degree of guilt or order a new trial.

We summarize the facts, viewing the evidence in the light most favorable to the Commonwealth and reserving certain facts for discussion of the relevant issues. See *Commonwealth v. Salemme*, 395 Mass. 594, 595 (1985). The defendant and some friends were in the parking lot of a sandwich shop in Rockland. Some distance away, near a van belonging to the victim, an argument had begun between the victim and Steven DiRenzo, another friend of the defendant. The victim took a baseball bat out of his van and used it to fend off DiRenzo, but did not actually swing it. At this point, DiRenzo called to the defendant. The defendant and several friends ran toward the van and began taunting the victim, who continued to use the bat. The victim fell, dropped the bat, and lay motionless on his stomach. While six or seven people kept hitting and kicking the victim, he asked them to stop and made no attempt to fight back. The defendant picked up the bat and swung it three times at the victim's head, crushing his skull and lacerating his brain. Each blow would have been sufficient to kill him. The victim, unconscious, was taken to a hospital, where he died two days later as a result of his head injuries.

1. *Evidence of extreme atrocity or cruelty.* The defendant argues that the evidence was insufficient to support a determination of extreme atrocity or cruelty. We reject this contention.[2] The evidence supported a jury's determination that several of the *Cunneen* factors were present. See *Commonwealth v. Cunneen*, 389 Mass. 216, 227 (1983). The victim asked his assail-

---

[1]The defendant was also convicted of assault and battery by means of a dangerous weapon and three charges of assault and battery. These charges arose from altercations that occurred earlier on the same day as the murder and involved different victims. On appeal the defendant does not claim error in these convictions. We discuss only the conviction of murder in the first degree.

[2]The defendant appears to argue that hitting a person over the head three times with a baseball bat is, as a matter of law, not *extreme* atrocity or cruelty. This argument is without merit.

ants to stop hitting him, yet the defendant struck him with the bat. This shows indifference to or pleasure in the victim's suffering. See *id.* Each blow was of sufficient force to kill the victim, yet the defendant struck three blows. This shows a disproportion between the means needed to cause death and those employed. See *id.* The jury were clearly warranted in concluding that three skull-crushing blows with a baseball bat constituted extreme atrocity or cruelty. See *id.* (factors include manner and force of blows, number of blows, instrument employed).

2. *Videotaped statement.* The defendant voluntarily surrendered himself to the police. A police officer took him to a conference room, where he was read the Miranda warnings. The defendant indicated that he understood them. He also assented to videotaping the interrogation. After the videotape equipment was set up, the police officer asked the defendant if he wanted to "make a statement." The defendant said, "Nope." The officer then asked him whether he wanted to talk about what happened. The defendant agreed to, and the interrogation proceeded. The defendant argues that the videotape, which was admitted in evidence and played for the jury, should have been suppressed because (1) by asking further questions after he indicated he did not want to make a statement, the police failed to "scrupulously honor" his right to remain silent and (2) in light of his youth and inexperience, his statements were not voluntary. We reject both contentions.

On review of a motion to suppress, we do not disturb the judge's findings of fact unless they are clearly erroneous. *Commonwealth* v. *Magee*, 423 Mass. 381, 384 (1996). However, we independently review the application of constitutional principles to the facts. *Id.* A defendant who has waived the Miranda warnings still retains the right to cut off interrogation but must indicate to the police that he or she is invoking the warning previously waived. *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 264-265 (1982). To terminate questioning, "there must be either an expressed unwillingness to continue or an affirmative request for an attorney." *Commonwealth* v. *Pennellatore*, 392 Mass. 382, 387 (1984). Once the defendant invokes his or her right to terminate questioning, that right must be "scrupulously honored." *Id.* at 386, quoting *Commonwealth* v. *Brant*, 380 Mass. 876, 882, cert. denied, 449 U.S. 1004 (1980).

In ruling on the defendant's motion, the judge found as a fact

that by saying, "Nope," the defendant meant only that he did not wish to make a formal statement and not that he was unwilling to answer questions. We cannot say this determination was clearly erroneous. Immediately before and after that point, the defendant appears to have been quite willing to talk. The judge was warranted in concluding that the defendant did not suddenly change his mind about discussing the incident, but had no prepared speech.

By declining to make a formal statement, the defendant neither terminated questioning nor invoked his right to remain silent. Cf. *Commonwealth* v. *Selby*, 420 Mass. 656, 661 (1995) (defendant's statement that he had nothing to add before shutting off tape recorder was not an invocation of right to remain silent). Thus, the police did nothing wrong by asking whether he wanted to discuss the incident.

"In determining whether a statement was made voluntarily, in compliance with due process of law, we examine whether, in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act. . . . Under this 'totality of the circumstances' test, we consider all of the relevant circumstances surrounding the interrogation and the individual characteristics and conduct of the defendant." (Citations omitted.) *Commonwealth* v. *Selby*, *supra* at 662-663. The defendant argues that, because he was seventeen years old and inexperienced with the criminal justice system, the statement should have been deemed involuntary. Age and inexperience are two factors among many for the judge to consider. See *id.* The judge's findings of fact reveal that he did consider these factors as well as the defendant's conduct during the interrogation, the police officer's conduct, and the tenor of the interview. Further, our review of the transcript of the videotape and the videotape itself discloses no coercive tactics by the police or unwillingness on the defendant's part to cooperate. We conclude that the statements were voluntary and the videotape properly admitted.

3. *Mental impairment.* The defendant has a history of mental impairment. He has been diagnosed as having an impulse control disorder, for which he has been taking medication. His doctor testified that under current diagnostic criteria, she would conclude that he has intermittent explosive disorder. This disorder is characterized by inability to control aggressive

impulses, reactions out of proportion to provocative stimuli, and discrete aggressive episodes of short duration. Such a disorder could impair the defendant's capacity to premeditate, to act with extreme cruelty, or to act with malice. The Commonwealth's expert, however, said that the defendant's actions were the result of a conduct disorder rather than a mental illness that would impair these capacities.

a. The defendant argues that the judge's instructions did not adequately address the impact of mental impairment on extreme atrocity or cruelty. Because he did not raise this issue at trial, we review for a substantial likelihood of a miscarriage of justice. The judge instructed the jury that they should consider the defendant's mental state when evaluating the evidence on the *Cunneen* factors and that mental impairment was one factor they should consider in determining whether or not the totality of the circumstances indicated extreme atrocity or cruelty. This instruction was correct. See, e.g., *Commonwealth* v. *Gould*, 380 Mass. 672 (1980). "Generally, we do not require trial judges 'to deliver their instructions in any particular form of words, so long as all necessary instructions are given in adequate words.' " *Commonwealth* v. *Sarmanian*, 426 Mass. 405, 408 (1998), quoting *Commonwealth* v. *Sinnott*, 399 Mass. 863, 878 (1987).

The defendant contends that the instructions in this case failed to make clear that the jury could consider mental impairment as to the "objective" *Cunneen* factors as well as to the "subjective" ones. Nowhere in our case law do we draw a distinction between "objective" and "subjective" *Cunneen* factors. Further, the instruction made it clear that the jury should consider mental impairment on the question whether the killing was committed with extreme atrocity or cruelty, which is all that the law requires. There was no error.[3]

b. The defendant also argues that the instructions failed to address the relationship between mental impairment and sudden

---

[3]The defendant argues that, because the jury did not convict him on the deliberate premeditation theory, they must have found that he was mentally impaired. Therefore, he suggests, they must have misunderstood the impact of mental impairment on extreme atrocity or cruelty. This argument is without merit. The jury could have found, for example, that he was not mentally impaired, but that the facts did not support an inference of deliberate premeditation. Alternatively, they could have found that he was impaired, but that the impairment only affected his capacity to premeditate.

combat.[4] He further contends that this alleged error was compounded by the judge's response to a question from the jury. We conclude that the judge's response to the question was appropriate and the instructions were not flawed.

The instructions made it clear that the jury had to conclude that the Commonwealth proved malice in order to convict the defendant of murder; that sudden combat, if determined by the jury to exist, was a mitigating factor that negated the existence of malice; and that the jury could consider mental impairment on the question whether the defendant acted with malice. Taken as a whole, the instructions adequately conveyed the law to the jury. See *Commonwealth* v. *Grey*, 399 Mass. 469, 470-471 (1987) (defendant entitled to instruction of the effect of mental impairment on malice); *Commonwealth* v. *Anderson*, 396 Mass. 306, 313-314 (1985) (sudden combat may negate malice). There was no error in the instructions.

During deliberations, the foreperson of the jury asked the judge to provide "a copy of the law as it relates to the definitions of the three degrees of murder." The judge responded that due to the court's limited technical capabilities, no transcript was available. The jury then asked "to listen to [the judge's] instruction again on the law as it pertains to degrees of murder." The judge asked the foreperson if the question meant that the jury wanted reinstruction on "first degree murder under the theory of deliberate premeditation, first degree murder with extreme atrocity and cruelty, and second degree murder." The foreperson responded affirmatively. The judge then repeated the instructions on murder, including mental impairment because of its relevance to malice, premeditation, and extreme atrocity or cruelty. He did not, however, reinstruct on manslaughter. Defense counsel expressed satisfaction. The defendant now argues that the omission of the manslaughter instruction created a substantial likelihood of a miscarriage of justice.

"The proper response to a jury question must remain within the discretion of the trial judge, who has observed the evidence and the jury firsthand and can tailor supplemental instructions accordingly." *Commonwealth* v. *Waite*, 422 Mass. 792, 807 n.11 (1996). Although the initial request for "the three degrees of

---

[4]The Commonwealth argues that the defendant was not entitled to a sudden combat instruction on any view of the evidence and therefore cannot complain that the instruction was incorrect. Because we conclude that the instructions were not erroneous, we do not reach this issue.

murder" may have been ambiguous, any ambiguity was resolved by the follow-up question and the foreperson's confirmation that the jury were asking only about murder and not about manslaughter. Moreover, defense counsel neither asked for a manslaughter reinstruction at the time nor objected when the re-instruction was complete. We conclude that the reinstruction was entirely proper. There was no substantial likelihood of a miscarriage of justice.

4. We have reviewed the entire record and conclude that relief pursuant to G. L. c. 278, § 33E, is not warranted.

*Judgment affirmed.*